FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

December 10, 2024

**Christopher M. Wolpert**
**Clerk of Court**

_____

THLOPTHLOCCO TRIBAL TOWN, a
federally recognized Indian Tribe,

    Plaintiff - Appellee,

v.

ROGER WILEY; RICHARD C.
LERBLANCE; AMOS McNAC;
ANDREW ADAMS, III; KATHLEEN R.
SUPERNAW; MONTIE R. DEER;
GEORGE THOMPSON, JR.; LEAH
HARJO-WARE,

    Defendants - Appellants.

No. 24-5011
(D.C. No. 4:09-CV-00527-JCG-CDL)
(N.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **McHUGH**, and **ROSSMAN**, Circuit Judges.

_____

This case returns to us after remand in 2014 for exhaustion in the courts of the

Muscogee (Creek) Nation. *See Thlopthlocco Tribal Town v. Stidham (Thlopthlocco*

*I)*, 762 F.3d 1226, 1229 (10th Cir. 2014). It involves a dispute between Appellee

Thlopthlocco Tribal Town (the "Town") and Nathan Anderson, who attempted to

seize control of the Town's governing body in 2007. In response, the Town filed suit

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

against Mr. Anderson in the Muscogee (Creek) Nation District Court. In so doing, the Town waived its sovereign immunity for purposes of that litigation. Two years later, the Town attempted to end the Muscogee-court litigation by withdrawing its waiver of immunity; however, the Muscogee district court refused to acknowledge the Town's sovereign immunity and dismiss the case. The Town therefore sued Appellants—judicial officers of the Muscogee (Creek) Nation (the "Officers")— in federal district court, asserting that they were wrongfully exercising jurisdiction over the Town.

This case has since followed a winding procedural road: In 2013, the district court dismissed the case for lack of subject matter jurisdiction; in 2014, we reversed that dismissal and remanded the case for tribal-court exhaustion; in 2022, the Muscogee (Creek) Nation Supreme Court dismissed the underlying Muscogee-court cases; and in 2023, the district court issued a declaratory judgment in favor of the Town. The Officers now appeal that declaratory judgment, arguing the district court lacked jurisdiction because the case is moot. We agree. The Muscogee courts are no longer exercising jurisdiction over the Town and, consequently, there is no longer a live case or controversy. Accordingly, we dismiss this appeal as moot and vacate the district court's judgment.

## I.    BACKGROUND

### A.    *Historical Background*

As is explained in more detail in our previous decision, the Town is a historic Creek tribe that was forcibly relocated to present-day Oklahoma in the 1820s and

2

1830s. *Id.* at 1229–30. In 1939, the Town became a federally recognized tribe after it drafted a "constitution and received its federal charter of incorporation." *Id.* at 1230.

The Town is governed by "a ten-member Business Committee, which is composed of five elected town officers—the Town King, two Warriors, a Secretary, and a Treasurer—and five advisors appointed by the elected officials." *Id.* at 1231. Pertinent here, the Town's constitution provides that (1) tribal members elect new town officers every four years, (2) Committee members can fill vacancies that arise between elections, and (3) Committee members can be removed at any time "by a majority vote of Tribal Town members." *Id.* Additionally, because the Town lacks the resources necessary to maintain its own judiciary, the federal government "gives federal funding earmarked for judicial services for the Thlopthlocco people to the" Muscogee (Creek) Nation's courts. *Id.* The Town thus has frequently relied on the Muscogee court system when it needs a judicial forum.

### B.      The First Muscogee Case: Anderson I

In 2007, the Town King, Nathan Anderson, "attempted to overthrow the Business Committee . . . and declare himself the only legitimately elected Tribal Town official." *Id.* at 1232. As the only remaining Business Committee member, Mr. Anderson then appointed nine of his supporters to the Committee. *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1144 (10th Cir. 2011) (discussing this background for related litigation).

In response, the Town (represented by the ousted Committee members) waived its sovereign immunity and sued Mr. Anderson in Muscogee district court, seeking

injunctive relief and a declaration that the ousted Committee members were "the lawful leaders of Thlopthlocco." App. Vol. V at 738[1]; *see Thlopthlocco Tribal Town v. Anderson (Anderson I)*, No. cv-2007-39 (M. (Cr.) Dist. Ct. June 11, 2007). The scope of the Town's sovereign-immunity waiver extended to "this dispute only, only [for] claims brought by the Plaintiff, Thlopthlocco Tribal Town, and only for injunctive and declaratory relief." App. Vol. V at 715. Additionally, the Town initiated internal efforts to remove Mr. Anderson as Town King and, in July 2007, Mr. Anderson was removed from office pursuant to a majority vote of the Town's members.

Even so, the litigation in *Anderson I* continued, largely because of crossclaims Mr. Anderson had filed against the Town. In February 2009, the Town withdrew its initial waiver of sovereign immunity and asked the Muscogee district court to dismiss *Anderson I*. But the Muscogee district court refused to dismiss the case, finding "even in the absence of the [] Town's consent, the Muscogee courts had jurisdiction to hear the suit." *Thlopthlocco I*, 762 F.3d at 1232. The Town responded by filing an interlocutory appeal with the Muscogee Supreme Court and the present lawsuit in the Northern District of Oklahoma, arguing that the Muscogee courts were unlawfully exercising jurisdiction over it. The federal case was ultimately stayed until the Muscogee Supreme Court issued a decision in the interlocutory appeal.

---

[1] Unless otherwise specified, citations to the Appendix are to Appellee's fifteen-volume Supplemental Appendix at ECF No. 28.

### C.     The Second Muscogee Case: Anderson II

While the interlocutory appeal and federal case were pending, Mr. Anderson filed a new lawsuit in the Muscogee district court challenging the Town's refusal to allow him to run as a candidate in the Town's January 2011 election. *See Anderson v. Burden (Anderson II)*, No. cv-2011-08 (M. (Cr.) Dist. Ct. Jan. 2009). The Muscogee district court suspended the January 2011 election, conducted a multi-day hearing, and ultimately entered an order in July 2011 directing the Town to reschedule the election and place Mr. Anderson on the ballot.

The Town filed an interlocutory appeal of this decision with the Muscogee Supreme Court, which was still considering the *Anderson I* appeal. That court denied the *Anderson II* appeal as untimely in January 2012. Then in March 2012, the court denied the *Anderson I* appeal as unripe, holding that whether the Town could withdraw its immunity waiver could not be decided "until sufficient fact-finding is conducted." App. Vol. XV at 2367.

### D.     First Round of Federal Litigation

The federal case subsequently resumed, and in January 2013 the district court dismissed the Town's claims against the Officers, holding *inter alia* that it lacked subject matter jurisdiction because the case involved an intratribal dispute. *Thlopthlocco Tribal Town v. Stidham*, No. 09-CV-527, 2013 WL 65234, at *14 (N.D. Okla. Jan. 3, 2013). We disagreed and reversed the district court's dismissal, holding that "whether a tribal court has exceeded its jurisdictional authority is a question of federal common law" over which federal courts have subject matter jurisdiction.

5

*Thlopthlocco I*, 762 F.3d at 1234 (citing *Nat'l Farmers Union Ins. v. Crow Tribe of Indians*, 471 U.S. 845, 852 (1985)). We also held that the Officers were not shielded by sovereign immunity because "a plaintiff seeking injunctive relief from the Muscogee courts' allegedly unlawful exercise of jurisdiction over a nonmember is entitled to sue the judge in federal court" under *Ex parte Young*, 209 U.S. 123 (1908). *Thlopthlocco I*, 762 F.3d at 1235 (following *Crowe & Dunlevy*, 640 F.3d at 1156).

Even so, we remanded the case for further proceedings because, although the Muscogee Supreme Court had denied the Town's interlocutory appeal in *Anderson I*, it had not yet decided whether the Town could withdraw its waiver of sovereign immunity. *Id.* at 1238. Thus, nothing prevented the Town from "seek[ing] appellate review in the Muscogee Supreme Court after the Muscogee district court completes its fact finding and reaches a decision on the merits." *Id.* We indicated that this court could "benefit from the Muscogee Supreme Court's tribal law analysis of the [] Town's and Muscogee Nation's relationship" and from its "analysis of the effect of the [] Town's withdrawal of its waiver of sovereign immunity." *Id.* at 1240. We therefore remanded the case for further proceedings in the Muscogee courts and instructed the district court to abate, rather than dismiss, the case to "protect the [] Town's position in this litigation." *Id.* at 1241.

### E.    *Muscogee Court Decisions*

The case thus returned to the Muscogee district court, and by May 2016 both the Town and Mr. Anderson had filed and fully briefed dispositive motions. Those motions remained pending for five years. Eventually, in May 2021, the Muscogee

district court dismissed *Anderson I* as moot and ordered the Town to schedule an election in *Anderson II*. The court recognized that a central question at issue was whether the Town's withdrawal of its immunity waiver required dismissal of the cases "or whether there is a point of no return where a plaintiff cannot unilaterally decide to voluntarily dismiss a case it initiated." App. Vol. XIV at 2268. The court found that "by 2009, [the Town] could no longer voluntarily dismiss the action and to allow such dismissal would be unjust to the defendants and inconsistent with concepts of judicial efficiency." But the court still dismissed *Anderson I*, finding that although it had "exercised proper jurisdiction over *Anderson I* for many years," the case was "no longer justiciable as a practical matter." *Id.* at 2274.

The parties appealed to the Muscogee Supreme Court, which dismissed both cases in February 2022. In so doing, the court reaffirmed that the Town "is a federally recognized band of the Muscogee (Creek) Nation" and "also something more under Muscogee tribal law," and it stated that this dual role "does not diminish [the Town's] rights, but expands them." App. Vol. XV at 2409. The court then affirmed the district court's dismissal of *Anderson I* as nonjusticiable based on "the current political status of [Mr.] Anderson." *Id.* at 2410. The court also ruled that the claims in *Anderson II* were not encompassed "within the scope of the initial" waiver in *Anderson I* and, consequently, they were barred "absent a waiver of sovereign immunity by the [Town]." *Id.* at 2411–12. Therefore, the court remanded *Anderson II* to the district court with instructions to dismiss *Anderson II* for lack of jurisdiction.

7

### F.     Post-Exhaustion Federal Proceedings

Not satisfied with this outcome, the Town returned to federal district court and sought a declaratory judgment that the Town had authority to withdraw a waiver of sovereign immunity. For their part, the Officers argued the "case is moot and that any opinion . . . would be advisory." *Thlopthlocco Tribal Town v. Wiley (Thlopthlocco II)*, 710 F. Supp. 3d 1043, 1053 (N.D. Okla. 2023).

The district court granted the Town's motion for a declaratory judgment in December 2023. *See id.* at 1062. In its judgment, the court found the case is not moot "because the question of whether the Muscogee (Creek) Nation Courts may exercise jurisdiction over the . . . Town after [it withdrew] its sovereign immunity waiver has not yet been resolved." *Id.* at 1054. The court explained that the Town "has a concrete interest in knowing whether" it could withdraw a waiver of sovereign immunity in the Muscogee courts. *Id.* The court decided that, because the Muscogee Supreme Court did not decide whether the Town's withdrawal of its immunity waiver divested the Muscogee courts of jurisdiction, there was still a live controversy regarding this issue. *Id.* at 1054–55.

The court alternatively held the case was justiciable under the "capable of repetition yet evading review" exception to mootness. *Id.* at 1056. The court found that whether the Town could withdraw a waiver of immunity was an issue capable of evading review because it arose in the context of an election dispute, and election disputes are by nature short in duration. *Thlopthlocco II*, 710 F. Supp. 3d at 1055–56. The district court further concluded "there is a reasonable expectation" that the issue

8

was capable of repetition because the Town has no judicial forum other than the Muscogee courts. *Id.*

On the merits, the court granted the Town's request for a declaratory judgment. It declared that the "Town is a federally recognized tribe, and it enjoys sovereign immunity as pronounced in the Muscogee (Creek) Nation Supreme Court's decision." *Id.* at 1060. The court further declared that the Town, as a sovereign, "may withdraw its consent whenever it may suppose that justice to the public requires it." *Id.* at 1061 (quoting *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1234 (10th Cir. 2010)). And the court specified that the "Town may withdraw its waiver of sovereign immunity in the Muscogee (Creek) Nation Courts if the tribal courts' exercise of jurisdiction exceeds the terms and conditions of the waiver." *Id.* The Officers timely appealed this judgment on January 19, 2024.

## II.   DISCUSSION

The Officers argue the district court erred by holding the case is not moot. This court reviews the jurisdictional question of mootness de novo. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010). We agree that the case is moot because there is no longer a live controversy.[2]

---

[2] Because we dismiss the case as constitutionally moot, we do not address the Officers' alternative argument that we lack jurisdiction under *Ex parte Young*, 209 U.S. 123 (1908), because there is no longer an ongoing violation of federal law. *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023) (affirming that federal courts "can address jurisdictional issues in any order [they] choose"). For the same reason, we do not reach the issue of prudential mootness.

### A.      Mootness Standard

The Constitution vests federal courts with jurisdiction over "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. This requires "that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020). For a dispute to be considered genuine and live, the plaintiff must establish standing: that the plaintiff suffered (1) an injury in fact, (2) caused by the defendant, which is (3) redressable by law. *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016).

The counterpart to standing is mootness, which ensures that a case still meets the Constitution's case-or-controversy requirement "at the time a court renders its decision." *Id.* at 1163. A case must be dismissed as moot if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Smith v. Becerra*, 44 F.4th 1238, 1247 (10th Cir. 2022) (internal quotation marks omitted). Claims for declaratory relief, in particular, are "moot if the relief would not affect the behavior of the defendant toward the plaintiff." *Id.* (internal quotation marks omitted). Even when "interesting academic questions" persist, federal courts "may answer only questions whose resolution will have an actual effect in the real world." *Wyoming v. U.S. Dep't of Int.*, 587 F.3d 1245, 1247 (10th Cir. 2009). Additionally, the party asserting mootness must establish "that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013).

## B.    Analysis

### 1.    Constitutional Mootness

The Officers bear the burden of establishing mootness. *Friends of the Earth*, 528 U.S. at 189. The Officers argue the case is moot because there are no pending cases in the Muscogee court system in which a court "is asserting, or threatening to assert, jurisdiction over the Town despite a withdrawn immunity waiver. No such litigation exists, and none is in the offing." Appellant's Br. at 32. The Officers urge that the Town's interest in knowing whether it will be allowed to withdraw an immunity waiver in future litigation "is the very sort of speculative, hypothetical factual scenario that would render . . . [any] judgment a prohibited advisory opinion." *Id.* at 32–33 (quoting *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1115 (10th Cir. 2016)).

We agree that there is no longer a live controversy. The Muscogee Supreme Court dismissed all cases involving the Town, and neither party asserts that any other Muscogee-court litigation is pending. In our previous decision, we held that the district court had jurisdiction to decide whether the Officers were infringing on the Town's "federally recognized rights" by exercising jurisdiction over the Town without its consent. *Thlopthlocco I*, 762 F.3d at 1234. But now, ten years later, the Officers are no longer exercising or attempting to exercise jurisdiction over the Town. Thus, this is the quintessential situation in which a judgment will not affect "the behavior of the defendant toward the plaintiff" because the Officers are no longer engaging in the challenged behavior. *Smith*, 44 F.4th at 1247 (quotation marks omitted).

11

Accordingly, the district court's exercise of subject matter jurisdiction over this matter amounts to an advisory opinion because it provides only a "possible, indirect benefit in a future lawsuit," and only if the Town were to again attempt to withdraw an immunity waiver. *United States v. Juvenile Male*, 564 U.S. 932, 937 (2011). Indeed, the district court acknowledged that the only "real-world effect" of its declaratory judgment was to advise the Town whether it could withdraw an immunity waiver if, in the future, it again "waives its sovereign immunity to submit to the jurisdiction of the Muscogee (Creek) Nation Courts." *Thlopthlocco II*, 710 F. Supp. 3d at 1054. And on appeal, the Town asserts only that the district court's judgment was proper because it provides guidance for future litigation the Town *may* initiate in the Muscogee courts.[3] But such concerns about "a hypothetical unfiled suit are not cognizable reasons for continuing litigation." *Schell*, 814 F.3d at 1115.

The Town also urges that there is an outstanding "rule of decision" in the Muscogee courts that the Town may not "withdraw any waiver of sovereign immunity," and that this existing rule of decision constitutes an ongoing injury sufficient to prevent a finding of mootness. Appellee's Br. at 28. But that argument is inconsistent with the Muscogee Supreme Court's actions. That court (1) dismissed

---

[3] Relying on *Three Affiliated Tribes v. Wold Engineering*, 476 U.S. 877 (1986), the Town also argues the case is not moot where "issues of access to court conditioned upon waivers of sovereign immunity present immediate questions to be resolved because they impinge upon the rights of the sovereign parties. Appellee's Br. at 35–36. But *Three Affiliated Tribes* does not discuss mootness; it establishes only that a state may not condition a tribe's access to state courts on a broad waiver of the tribe's sovereign immunity. *See id.* at 891–92. The case is thus irrelevant to the present question of mootness.

*Anderson I* as moot and (2) dismissed *Anderson II* for lack of jurisdiction, holding that the Town had *not* waived its immunity for that litigation. And to the extent there is a "rule of decision" in the Muscogee courts preventing the Town from withdrawing a waiver of immunity, nothing indicates that the correctness of that rule could not be litigated when the issue arises in a future case. The fact that the Muscogee courts have previously asserted jurisdiction over the Town after it attempted to withdraw an immunity waiver, standing alone, does not establish "standing [for the Town] to pursue declaratory relief." *Already*, 568 U.S. at 730.

In sum, the Town is no longer suffering an injury because the Muscogee courts have relinquished all jurisdiction over it. Accordingly, the case is moot.

## 2.     Voluntary Cessation

Despite this finding of constitutional mootness, the Town argues that an exception to mootness is applicable here because the "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case" unless "the allegedly wrongful behavior could not reasonably be expected to recur." Appellee's Br. at 41 (quoting *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 n.10 (1982)).

A defendant's voluntary cessation of challenged conduct will not render a case moot unless "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1214 (10th Cir. 2015) (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1115). We have also held that the voluntary-cessation exception is

inapplicable when "the controversy has become moot through the normal course of events rather than through the unilateral action of the defendant." *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1222 (10th Cir. 2005).

First, the Officers' alleged violation—exercising jurisdiction despite the Town's withdrawal of its immunity waiver in *Anderson I*—cannot reasonably be expected to recur. The Town attempted to withdraw the immunity waiver nearly two years after it initiated litigation in the Muscogee district court, against a procedural backdrop where the Town had argued vigorously in favor of Muscogee-court jurisdiction. This factual background informs the jurisdictional issue because whether a sovereign can withdraw a waiver of sovereign immunity in litigation that it *initiated* turns on a fact-dependent analysis of whether the attempted withdrawal constitutes a "selective assertion of immunity" barred by "[p]rinciples of fairness and consistency." *Vas-Cath, Inc. v. Curators of Univ. of Mo.*, 473 F.3d 1376, 1384 (Fed. Cir. 2007); *see also Lapides v. Board of Regents*, 535 U.S. 613, 622 (2002) (distinguishing between situations in which a sovereign "*voluntarily* invoked the jurisdiction of the federal court" and those in which "a private plaintiff had *involuntarily* made [the sovereign] a defendant"); *but see Thlopthlocco I*, 762 F.3d at 1240 (stating without deciding that federal law allows a sovereign to withdraw an immunity waiver in litigation that the sovereign initiated). In short, whether a sovereign may withdraw a waiver of sovereign immunity cannot be answered with a bright-line rule but rather turns on the circumstances at hand. Accordingly, the

Officers' allegedly unlawful exercise of jurisdiction, which was contingent on the specific factual backdrop of *Anderson I* and *II*, is not reasonably likely to recur.

Second, the Town's *Ex parte Young* challenge against the Officers' allegedly unlawful exercise of jurisdiction could be redressed only through prospective injunctive relief preventing the Officers' ongoing exercise of jurisdiction. *See Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012) (denying a *Young* claim that sought to "address alleged past harms rather than prevent prospective violations of federal law"). The Town has now received that relief—the Muscogee courts have dismissed *Anderson I* and *II* and are no longer exercising jurisdiction over the Town. The Muscogee Supreme Court's dismissal of *Anderson I* and *II* has therefore "eradicated the effects of the alleged violation." *Ind*, 801 F.3d at 1214 (quotation marks omitted); *see, e.g.*, *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017) (concluding there was no evidence of harmful effects because harmful effects at issue were not "currently affecting [the plaintiff]"); *Rio Grande Silvery Minnow*, 601 F.3d at 1120 (dismissing a case as moot when the court could "identify no lingering effects from the [defendants'] alleged violations").

The Town urges that the voluntary-cessation exception controls under the Supreme Court's recent decision in *Federal Bureau of Investigations v. Fikre*, 601 U.S. 234 (2024). But that case is easily distinguishable. There, the plaintiff challenged the FBI's decision to list him on the national No Fly List. *Id.* at 238–39. After the plaintiff initiated the lawsuit, the FBI removed him from the No Fly List without explanation and with no assurances that he would not be relisted in the

future. *Id.* at 239–40. The Court held that the FBI's voluntary cessation was insufficient to moot the case because it had not demonstrated that the challenged conduct would not recur in the future. *Id.* at 244–45. Here, in contrast, the case is moot not because of the "the unilateral action of the defendant[s]" but rather due to "the normal course of events." *O'Connor*, 416 F.3d at 1222. Unlike the FBI in *Fikre*, which unilaterally removed the plaintiff from the No Fly List without explanation, the Muscogee courts relinquished jurisdiction over *Anderson I* because the case was moot and those courts thus had no authority to do anything else.

In short, the Muscogee Supreme Court dismissed *Anderson I* due to the "normal course of events," not because it was apparently attempting to evade federal review. Accordingly, the voluntary-cessation exception is inapplicable. *See, e.g.*, *Rio Grande Silvery Minnow*, 601 F.3d at 1117 ("In practice, however, [the voluntary-cessation exception] frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case.").

### 3.    Capable of Repetition Yet Evading Review

The Town also argues the case is not moot because the jurisdictional issue is capable of repetition, yet evading review. The district court held that this exception applied because (1) the case involves election disputes and election disputes are, by nature, short in duration, and (2) the jurisdictional issue is likely to recur in the future because the Town relies on the Muscogee courts as a judicial forum. *Thlopthlocco II*, 710 F. Supp. 3d at 1055–56. We disagree.

The capable-of-repetition exception to mootness applies only in "exceptional situations." *Jordan v. Sosa*, 654 F.3d 1012, 1035 (10th Cir. 2011) (quotation marks omitted). It requires a plaintiff to establish that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Id.* (alterations in original) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). A plaintiff bears the burden of showing that the challenged action is "*necessarily* of short duration." *See id.* at 1036. For example, "disputes involving abortion evade review because the relatively short duration of human gestation does not allow such matters to be fully litigated before the end of the pregnancy." *Disability L. Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 997 (10th Cir. 2005).

The district court erroneously found this exception applicable because it confused the present jurisdictional issue—whether the Town has sovereign immunity and can withdraw a waiver of that immunity—with the election disputes in *Anderson I* and *II*. Although the underlying tribal cases generally dealt with election disputes, *this* case inquires whether the Muscogee courts had jurisdiction over the Town based on a waiver of sovereign immunity the Town subsequently withdrew. That jurisdictional question is not "necessarily of short duration." *Jordan*, 654 F.3d at 1036. There is no indication the Town would be unable to challenge the Muscogee courts' exercise of jurisdiction in a future case, nor that the issue is inherently time sensitive.

17

Indeed, on appeal the Town agrees that the "brevity of opportunity to challenge the [Muscogee courts'] actions was not caused by . . . fixed events such as elections." Appellee's Br. at 46. But the Town argues it lacked sufficient opportunity to litigate the jurisdictional issue in federal court because the Officers "refused to promptly rule," making the Town "a prisoner of the exhaustion of tribal remedies." *Id.* at 46–47. However, the Town's frustration over the Muscogee courts' delay in deciding *Anderson I* and *II* does not make the jurisdictional question *necessarily* short in duration. *See Disability L. Ctr.*, 428 F.3d at 997 (holding this exception only applies when an issue involves "an inherent time limit such that it would necessarily evade review in future litigation"). Because the question of whether the Town can withdraw a previously issued waiver of sovereign immunity after initiating litigation in the Muscogee courts can arise in myriad factual contexts, the chance to resolve that question is not necessarily of short duration.

Accordingly, the capable-of-repetition exception does not counsel against finding this case moot.

## III.    CONCLUSION

We hold the case is constitutionally moot because the Muscogee courts have relinquished all jurisdiction over the Town. Therefore, we VACATE the district court's judgment and DISMISS the case as moot.

Entered for the Court

Carolyn B. McHugh
Circuit Judge